## J. F. Grant and another v. W. Ryan, Administrator, etc.

1. It is now the well-established doctrine that when a transaction is tainted by illegality, no legal or equitable rights can result from it. And it is immaterial whether the illegality be part of the cause of action, or be merely introductory to it; if the plaintiff requires any aid from the illegal transaction, in order to make out his case, he cannot maintain the suit.
2. Plaintiff alleged the sale to the defendants of a stock of cattle, to be paid for by them in Confederate States bonds, and he alleged the illegality of the transaction and the worthlessness of the bonds, and sought judgment for the value of the cattle. *Held*, that the action cannot be maintained. The fact that the plaintiff himself renounces the illegal contract, cannot entitle him to recover on a transaction void for illegality, and in which he was *in pari delicto* with the defendants.
3. This court adheres to its decisions that executory contracts based upon Confederate money, cannot be enforced. It holds that no pretense of force or necessity can vindicate such contracts, and recognizes no analogy between the condition of the people of the so-called Confederate States and that of a people temporarily subjected to the authority of a foreign power, and compelled to submit to its exactions.
4. If a person of unsound mind was fraudulently induced to part with property for a Confederate money consideration, relief would be afforded him by the courts; but his recovery would be measured by the value of the property, and not that of the Confederate money.

APPEAL from Burleson. Tried below before the Hon. J. M. Onins.

The opinion states the case.

*Hancock & West*, for the appellants.

*Sayles & Bassetts*, for the appellee, insisted that as the action was brought in disaffirmance of the illegal contract, and not to enforce it, the plaintiff should be allowed to recover; and they cited Jaques *v.* Withey, 1 Blackstone's R., 65; Mount *v.* Waite, 7 Johnson, 440; Insurance Co. *v.* Kip, 8 Cowan, 20; also 19 Johnson, 1; 4 Wendell, 652; 3 Wendell, 296; and 9 Texas, 389.

WALKER, J. This was an action brought in the District Court by appellee's intestate.

The plaintiff sets forth the following contract:

" Due Peter Mullen, or order, twelve thousand dollars, bear-
" ing seven per cent. per annum interest, until paid, in Con-
" federate States seven per cent. bonds, which we, or either of
" us, promise to pay to Peter Mullen or order, on or before
" the first day of August next, with seven per cent. interest
" from date; it being for his stock of cattle, which we have
" purchased from him this day, in the following marks and
" brands."

The petition alleges that the plaintiff was aged and infirm, weak in body and mind, and incapable of making such a contract at the time it was entered into. But these allegations do not appear to have been relied upon in the farther progress of the cause, it appearing on the trial that nine thousand dollars, or three-fourths of the amount called for by the contract, had been paid and accepted by the appellee. The District Court appears to have entertained the opinion that, so far as payment had been made, the contract was executed and could not be disturbed, but, to the extent of one-fourth (the amount unpaid), the contract was executory and might be enforced; and under

a charge to this effect, the jury found for the appellee the value of three thousand dollars Confederate States Treasury notes, and returned their verdict for the sum of one thousand six hundred and seventy-eight dollars and sixty cents.

This instruction of the court was in conflict with the decisions of this court, and, with the exception of the State of North Carolina, with the decisions of the courts of all the States lately in rebellion.

But we are appealed to in this case, virtually to correct our own decisions by the authority of the case of Thorington v. Smith, 8 Wallace. We are willing to quote into this opinion so much of the decision of the Supreme Court of the United States as bears upon this question, allowing our own opinions and that of Thorington v. Smith to stand before the profession upon their own soundness or unsoundness. In Thorington v. Smith it is held, that a contract for the payment of Confederate States Treasury notes, made between parties residing within the so-called Confederate States, can be enforced in the courts of the United States, the contract having been made on a sale of property in the usual course of business, and not for the purpose of giving currency to the notes, or otherwise aiding the rebellion. The court say, " That it cannot be questioned that " Confederate notes were issued in furtherance of an unlawful " attempt to overthrow the government of the United States by " insurrectionary force ; and that no · contracts made in aid of " such an attempt can be enforced through the courts of the " country whose government is thus assailed. But, as a neces- " sary consequence, from the actual supremacy of the insurgent " government as a belligerent, within the territory where it cir- " culated, this currency must be considered in courts of law in " the same light as if it had been issued by a foreign govern- " ment, temporarily occupying a part of the territory of the " United States. Contracts stipulating for payment in this cur- " rency cannot be regarded for *that reason only* as made in aid " of the foreign invasion in the one case, or of the domestic in- " surrection in the other. They have no necessary relations to

" the hostile government, whether invading or insurgent. They " are transactions in the ordinary course of civil society, and, " though they may indirectly and remotely promote the ends " of the unlawful government, are without blame, except when " proved to have been entered into with actual intent to further " invasion or insurrection. We cannot doubt that such con- " tracts should be enforced in the courts of the United States, " after the restoration of peace, to the extent of their just " obligation."

We have never been able to regard the condition of the peo- ple of the Confederate States as analogous to that of a people overrun by, and temporarily subjected to the authority of a foreign power, bowing as per force to the exactions and require- ments of a dominant power. But, on the other hand, History will regard them as a people endeavoring to revolutionize the government to which they belonged, and establish by force, and against the authority of their government, an independent sov- ereignty. To use the language of the opinion in Thorington v. Smith, they were engaged in " an unlawful attempt to overthrow " the Government of the United States by insurrectionary force," and these Confederate notes were issued in aid and furtherance of that attempt. If, then, this be true, that most learned court say " that no contract made in aid of such an attempt can be enforced through the courts of the country whose government is thus assailed." Now, we believe that no contract was ever made to be executed in Confederate money that does not come within the rule thus laid down, and that no plea of force or ne- cessity can be urged to justify the utterance of these Confeder- ate notes, or contracts made to be executed in them.

But the learned counsel for appellee insists that the recovery in this case was not in violation of the decisions of this court, and quotes from Cundiff v. Herron, 33 Texas, 622, to show that when that case was decided, we did not regard our decisions as in conflict with those of the Supreme Court of the United States; and it is true, as stated by the learned counsel, that our decisions have been made in cases where the action has been

based upon the contract itself, and the object has been either to enforce specific performance or obtain relief against executed contracts.

It is maintained here that the appellee is not *in pari delicto* with his adversaries, but that he is disaffirming a contract acknowledged to be illegal, and setting up independent equities upon which he ought to recover. It is not denied by this court but that this doctrine has been maintained by very respectable authorities, but we think they have all been expressly overruled, or have come to be regarded by the profession as of very doubtful authority. It is now certainly the well established doctrine that where an original transaction is tainted by illegality, no rights in law or equity can flow from it which would give a party the right to recover upon it; and, as is said in appellant's brief, it is immaterial whether the illegality be part of or merely introductory to the cause of action—if the plaintiff requires any aid from the illegal transaction to make out his case, he cannot maintain the suit. Many authorities are quoted in support of this doctrine, in the very able brief of appellant's counsel.

In this case, the plaintiff, in order to recover, sets out the sale of his cattle, and if he had not exhibited the contract in his own pleading, the defendants below undoubtedly would have done so, and this would place the parties *in pari delicto*.

Had the plaintiff below proved the allegations of his petition, so far as to show that he had been fraudulently inveigled into the contract, or that by reason of imbecility or unsoundness of mind he was incapable of entering into the contract, undoubtedly a court of equity would give him relief; but the instructions of the court and the verdict of the jury do not proceed upon this theory of the case, but it is attempted to enforce the specific performance of so much of the contract as was regarded by the court as not having been executed. This was an erroneous view of the law, and the judgment must be reversed. We will not dismiss the case, for the reason already stated in the opinion, that the appellee may, upon the grounds suggested,

be entitled to relief ; and if he is entitled to relief, he is not entitled to recover in current money the mere value of three thousand dollars of Confederate States bonds, but he is entitled to recover the value of his cattle, whatever that may be, at the time the appellants took them, and interest on the same.

The cause is therefore remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.